**Denise JARRETT, Individually and On Behalf of All Others Similarly Situated, Plaintiff,**

v.

**PANASONIC CORPORATION OF NORTH AMERICA; Sanyo North America Corporation; Sanyo Manufacturing Corporation; Wal–Mart Stores, Inc.; and Wal–Mart Stores Arkansas, L.L.C., Defendants.**

No. 4:12–cv–00739–SWW.

United States District Court, E.D. Arkansas, Western Division.

March 27, 2013.

Andrew J. Cross, Jacob A. Flint, Jeffrey J. Lowe, Carey, Danis & Lowe L.L.C., St. Louis, MO, Susan E. Burgess, Thomas G. Buchanan, III, Law Office of Thomas G. Buchanan, Little Rock, AR, for Plaintiff.

Amy L. Brown, Squire Sanders LLP, Washington, DC, John Keeling Baker, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, Joseph C. Weinstein, Squire Sanders LLP, Cleveland, OH, Marshall S. Ney, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Rogers, AR, for Defendants.

## OPINION AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Plaintiff Denise Jarrett brings this class action against Defendants Panasonic Cor-

poration of North America, Sanyo North America Corporation, Sanyo Manufacturing Corporation, Wal–Mart Stores, Inc., and Wal–Mart Stores Arkansas, L.L.C., alleging the Defendants designed, manufactured, distributed or sold defective 42″ and 46″ Sanyo plasma televisions. Plaintiff filed her action in the Circuit Court of Pulaski County, Arkansas, but it was removed to this Court by Defendants under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d).

Now before the Court is Plaintiff's motion to remand on grounds this action does not fall within CAFA jurisdiction [doc. # 13]. Defendants have responded in opposition to Plaintiff's motion and Plaintiff has filed a reply to Defendants' response. For the reasons that follow, the Court denies Plaintiff's motion to remand.

## I.

Plaintiff claims that in November 2010 she purchased a 46″ Sanyo plasma television at a Wal–Mart store in Little Rock, Arkansas, but that in October 2011, the television began to malfunction, losing partial picture resulting in the right side of the screen becoming black. Compl. ¶¶ 17–18. Plaintiff claims "[t]he 42″ and 46″ Sanyo plasma televisions have a design defect causing the screen to flicker, lose picture intermittently, lose full picture and/or lose full picture and sound, sometimes within hours of purchase." Compl. ¶ 6. Plaintiff claims the defect she experienced is "widespread and systemic across the United States" and that "[d]espite longstanding knowledge of the problems," Defendants have purposely concealed, suppressed, and omitted to disclose to consumers that its 42″ and 46″ Sanyo plasma televisions are defectively designed. Compl. ¶¶ 7, 20. Plaintiff asserts the following claims against Defendants: Count I—Breach of Implied Warranty of Mer-

chantability; Count II—Violation of the Arkansas Deceptive Trade Practices Act (ADTPA), Ark.Code Ann. § 4–88–101 *et seq.;* and Count III—Unjust Enrichment. Compl. ¶¶ 42–74.

Plaintiff proposes a putative class that consists of "[a]ll persons and entities residing in the United States who purchased a 42″ and 46″ Sanyo plasma television" and a putative subclass of "[a]ll persons and entities residing in the State of Arkansas who purchased a 42″ and 46″ Sanyo plasma television." Compl. ¶ 24. Plaintiff claims that the class and subclass "are both composed of, at least, thousands of people who purchased 42″ and 46″ Sanyo televisions, with the same common defect that causes similar characteristics and symptoms." Compl. at ¶ 25. Plaintiff claims that the purchase price of the televisions was between $900 and $1,500 and that the repair costs have ranged "from $500 to $700 and more." Compl. ¶¶ 5, 8.

As for the relief sought, Plaintiff has included in her complaint a stipulation to seek "[a]ctual and compensatory damages in an amount less than $75,000 per Plaintiff and each Class member not to exceed a total of five million dollars ($5,000,000), exclusive of interest and costs." Compl. pg. 17, ¶ D. Plaintiff also seeks, *inter alia,* equitable and injunctive relief, punitive damages, and attorneys' fees. Compl. pg. 17, ¶¶ B, E, and G.

## II.

■ CAFA grants federal district courts original jurisdiction over state-law-based class actions so long as there is minimal diversity, at least 100 class members, and the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (5)(B); *Standard Fire Ins. v. Knowles,* —— U.S. ——, 133 S.Ct. 1345, 1348–49, 185 L.Ed.2d 439 (2013). CAFA

"is intended to expand substantially federal court jurisdiction over class actions" and "[i]ts provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Westerfeld v. Independent Processing, LLC,* 621 F.3d 819, 822 (8th Cir.2010) (quoting S.Rep. No. 109–14, at 43 (2005), 2005 U.S.C.C.A.N. 3, 41). See also *Knowles,* 133 S.Ct. at 1350 (primary objective of CAFA is to ensure federal court consideration of interstate cases of national importance).

Plaintiff does not dispute that at least one member of the putative class is a citizen of a state different from that of at least one Defendant and that the aggregate number of putative class members exceeds 100. Rather, Plaintiff argues that this action does not fall within CAFA jurisdiction because Defendants have failed to meet their burden of proof showing that the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. Plaintiff argues this action must therefore be remanded to the state court from which it was removed.

### A.

■■■ A party seeking to remove an action under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum. *Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935, 944 (8th Cir. 2012); *Bell v. Hershey Co.,* 557 F.3d 953, 958 (8th Cir.2009). Under the preponderance standard, the jurisdictional fact "is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude" that they are. *Hartis,* 694 F.3d at 944 (quoting *Bell,* 557 F.3d at 959) (emphasis in original). Such an inquiry is fact intensive. *Id.* The

removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof. *Id.* at 944–945 (quotation marks and citation omitted). Discovery and trial come later. *Id.* The removing party need not confess liability in order to show that the controversy exceeds the threshold. *Id.* at 945. "[T]he claims of the individual class members shall be aggregated" in determining whether the jurisdictional minimum under CAFA has been met, 28 U.S.C. § 1332(d)(6), and there is no requirement under CAFA that any individual plaintiff's claim must exceed $75,000. *Cappuccitti v. DirecTV, Inc.,* 623 F.3d 1118, 1122 (11th Cir.2010) (per curiam) (citing 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3704 (Supp.2010)).

■■■ "Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Id.* (quoting *Bell,* 557 F.3d at 956). In addressing this issue, " '[i]t is axiomatic that the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal.' " *Hargis v. Access Capital Funding, LLC,* 674 F.3d 783, 789 (8th Cir.2012) (quoting *Schubert v. Auto Owners Ins. Co.,* 649 F.3d 817, 822 (8th Cir.2011)). See also *Knowles,* 133 S.Ct. at 1349–50 (for purposes of removal jurisdiction, court's inquiry is limited to examining case as of the time it was filed in state court). " 'Further, jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated.' " *Hargis,* 674 F.3d at 789 (quoting *Quinn v. Ocwen Fed. Bank*

*FSB*, 470 F.3d 1240, 1248 (8th Cir.2006) (per curiam)).

### B.

#### 1.

■ The Court first addresses the impact of Plaintiff's stipulation in her complaint to seek "[a]ctual and compensatory damages in an amount less than $75,000 per Plaintiff and each Class member not to exceed a total of five million dollars ($5,000,000), exclusive of interest and costs." Compl. pg. 17, ¶ D. The Court finds this stipulation does not on its own deprive the Court of CAFA jurisdiction as it does not speak for those Plaintiff purports to represent. *Knowles*, 133 S.Ct. at 1348–49. "That is because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Id.* Thus, while the stipulation at issue here can tie Plaintiff's hands, it does not resolve the amount-in-controversy question in light of her inability to bind the rest of the class. *Id.* 133 S.Ct. at 1350–51. Accordingly, the Court, in following CAFA's requirement to aggregate the proposed class members' claims, must ignore Plaintiff's stipulation. *Id.*[1]

#### 2.

■ The Court now turns to whether the matter in controversy exceeds $5 million. Plaintiff broadly defines the putative class as "[a]ll persons and entities residing in the United States who purchased a 42″ and 46″ Sanyo plasma television." Compl. ¶ 24. Defendants note that Sanyo Manufacturing Company manufactured and sold over 400,000 42″ Sanyo plasma televisions to Wal–Mart, that Wal–Mart sold over 390,000 42″ Sanyo plasma televisions in the United States, and that Wal–Mart had sales in the amount of $132,338,440 of 42″ Sanyo plasma televisions. Houston Decl. ¶ 5 (Notice of Removal, Ex. A); Shy Aff. ¶ 5 (Notice of Removal, Ex. B). Plaintiff downplays these numbers, stating that the proposed class consists only of those persons who purchased "defective" 42″ and 46″ Sanyo plasma televisions, but she claims the defect she experienced is "widespread and systemic across the United States" and that "at least[ ] thousands of people" purchased 42″ and 46″ Sanyo plasma televisions with the same common defect. Compl. ¶¶ 20, 25. Plaintiff also claims the repair costs were at a minimum of $500 per television set, Compl. ¶ 8, and if even only 1% of the 390,000 42″ Sanyo plasma televisions sold by Wal–Mart were defective, the resultant math—3,900 × $500 (minimum) = $1,950,000—demonstrates that the potential actual damages could be substantial.[2] Plaintiff also seeks uncapped punitive damages and she does not dispute that if she "is successful in obtaining the class certification requested, as well as the relief she seeks, not considering the defenses that may be raised, it is more likely than not that class counsel will be awarded substantial attorneys' fees, most probably

---

1. Plaintiff has also included with her motion to remand a stipulation swearing and affirming that she "do[es] not now, and will not at any time during this case, whether it be removed, remanded, or otherwise, seek damages for myself or any other individual class member in excess of $75,000.00 (inclusive of costs and attorneys' fees) or seek damages for the class as alleged in the complaint in excess of $5,000,000.00 in the aggregate (inclusive of costs and attorneys' fees)." Sworn and Binding Stipulation ¶ 2 (Motion to Remand, Ex. A). Even without benefit of *Knowles*, the Court would not consider this post-removal stipulation in determining the amount in controversy as jurisdiction is determined at the time of removal. *Knowles*, 133 S.Ct. at 1349–50; *Hargis*, 674 F.3d at 789.

2. This math does not take into account the number of 46″ Sanyo plasma televisions that were sold, which Defendants do not address.

in the range of 25% to 35% of the amount of the class recovery." Allen Decl. ¶ 5 (Notice of Removal, Ex. C)).

Given the broad class definition Plaintiff proposes and the breadth of the relief she seeks, including punitive damages and attorneys' fees, the Court finds that Defendants properly removed this action under CAFA. Even if the aggregated actual damages in this action do not exceed $5 million, those actual damages could, as previously shown, approach the $5 million threshold and far lesser amounts of actual damages have been held to satisfy the CAFA amount-in-controversy requirement because of the potential for punitive damages and attorneys' fees. *Cf. Kerr v. Ace Cash Experts, Inc.,* No. 4:10cv1645, 2010 WL 5177977, *2 (E.D.Mo. Dec. 14, 2010) (even if plaintiffs are correct that their actual damages total $1,800,000, or even only $594,000, those damages are sufficient to establish CAFA amount-in-controversy requirement because of the potential for punitive damages and attorneys' fees); *Brown v. City Chevrolet, LLC,* No. 09–0642–CV–W–GAF, 2009 WL 3485833, *1 (W.D.Mo. Oct. 28, 2009) (actual aggregated damages could amount to roughly $1,004,099, leaving a $3,995,992 difference between the amount of actual damages and the $5,000,001 jurisdictional requirement; "A fact finder could legally and permissibly award such an amount as punitive damages (*i.e.,* a little more than 3.98 times actual damages), not to mention reasonable attorney fees" and "[b]ased on these facts, CAFA's amount in controversy requirement is met"); *Thornton v. DFS Services LLC,* No. 4:09cv1040, 2009 WL 3253836, *1–2 (E.D.Mo. Oct. 9, 2009) (average actual damages of each of 32,471 Missouri customers was $191.90 equaling an amount in controversy of $6,200,000; court noted that "[e]ven if only a fraction of the Missouri customers suffered actual damages, plaintiff is bringing additional claims for punitive damages and attorneys' fees, which could easily exceed the $5,000,000 threshold" of CAFA); *Kates v. Chad Franklin Nat. Auto Sales North LLC,* No. 08–0384–CV–W–FJG, 2008 WL 3065009, *2 n. 5 (W.D.Mo. July 30, 2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA); *Bass v. Carmax Auto Superstores, Inc.,* No. 07–0883–CV–W–ODS, 2008 WL 441962, *2 (W.D.Mo. Feb. 14, 2008) (actual damages of $658,431 satisfied CAFA amount-in-controversy requirement as an award of punitive damages in an amount approximately 6.7 times the actual damages "would likely be constitutionally acceptable," and "the total of punitive damages and attorney fees could easily (and legally) be sufficient to bring the total amount in controversy over the jurisdictional requirement"). Aggregating the value of the relief Plaintiff sought in her complaint at the time of removal, the Court finds that Defendants have proven by a preponderance of the evidence that a fact finder might legally conclude that the amount in controversy exceeds $5 million. Plaintiff has not established to a legal certainty that, at the time of removal, the claim was for less than the requisite amount.

## III.

For the foregoing reasons, the Court finds that Plaintiff's motion to remand [doc.# 13] should be and hereby is denied.